J-S37001-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MICHAEL DYAL LEE | |
| Appellant | No. 1116 WDA 2014 |

Appeal from the Judgment of Sentence June 4, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0006185-2012

BEFORE:  GANTMAN, P.J., SHOGAN, J., and LAZARUS, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED MAY 10, 2016**

Appellant, Michael Dyal Lee, appeals from the judgment of sentence entered in the Allegheny Court of Common Pleas, following his jury trial convictions for two (2) counts of possession with intent to deliver a controlled substance ("PWID"), three (3) counts of simple possession, and one (1) count each of possession of drug paraphernalia, gambling devices, and persons not to possess firearms.[1]  We affirm.

The relevant facts and procedural history of this appeal are as follows. On April 16, 2012, Officers Rosato and Woodhall conducted narcotics surveillance on 3327 Ward Street in Pittsburgh.  Appellant lived on the first

_____

[1] 35 P.S. § 780-113(a)(30), (a)(16), (a)(32); 18 Pa.C.S.A. §§ 5513(a)(1), 6105(a)(1), respectively.

floor of the three-story house. Another individual occupied the top two floors of the house. The officers set up surveillance at 6:15 p.m. At around 6:30 p.m., the officers began to observe people enter the building, stay for under four minutes, and then leave. At 6:35 p.m., the officers observed a woman enter the building and exit two or three minutes later. At 6:45 p.m., a man parked his motorcycle in front of the premises, entered the house, and left approximately three minutes later. The officers observed the man place something from his hand into the gas tank pouch attached to his motorcycle. The motorcyclist then drove down Ward Street at high speed, turned right onto another street without signaling, and made a second right turn without observing a stop sign. The officers initiated a traffic stop of the motorcyclist. As the motorcyclist pulled over, Office Woodhall observed him open the gas tank pouch and pull out a clear plastic bag containing unknown objects. The officers pulled up to the left of the motorcycle, at which point the motorcyclist placed the objects in the bag in the corner of his mouth. The officers immediately tried to remove the objects from the motorcyclist's mouth but he swallowed the objects before the officers could successfully extract them. While in custody, the motorcyclist admitted he had purchased narcotics from 3327 Ward Street, and did so on a regular basis. The officers obtained a search warrant for 3327 Ward Street that same day. At approximately 9:40 p.m., Officers Rosato and Woodhall arrived at 3327 Ward Street with several other officers and executed the warrant. Appellant

was present in his first-floor residence and the officers took him into custody along with six other individuals. The police also recovered from the residence a firearm, chunks of crack cocaine, baggies of marijuana, pills, digital scales, thousands of dollars in cash, and dice used for a gambling operation. The police briefly detained the resident of the second and third floors until they determined she was living in an independent dwelling and was not affiliated with the individuals in Appellant's first-floor residence.

The Commonwealth charged Appellant with multiple counts of PWID, gambling devices, persons not to possess firearms, and related offenses. On February 6, 2013, Appellant filed a motion to suppress all evidence seized during the search of his residence, as well as any subsequent statements to the police. Following a hearing, the court denied Appellant's suppression motion on February 12, 2013. On April 1, 2013, Appellant filed a motion to reveal the identity of the Commonwealth's confidential informant, which the court denied by order dated April 30, 2013. A jury subsequently convicted Appellant of PWID, simple possession, possession of drug paraphernalia, gambling devices, and persons not to possess firearms. The court sentenced Appellant on December 19, 2013, to concurrent mandatory minimum terms of five (5) to ten (10) years' incarceration for the two PWID convictions. On December 27, 2013, Appellant timely filed a post-sentence motion to reconsider sentence, which the court granted. The court resentenced Appellant on June 4, 2014, to concurrent terms of eleven-and-one-half

(11½) to twenty-three (23) months' incarceration, followed by two (2) years' probation, for the PWID convictions. The court imposed no further penalty for the remaining convictions. Appellant's new sentence did not include a mandatory minimum term. On June 10, 2014, the Commonwealth filed a timely post-sentence motion, which the court denied on June 18, 2014. Appellant timely filed a notice of appeal on July 11, 2014. On August 11, 2014, the court ordered Appellant to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b). After the court granted two extensions, Appellant timely filed a Rule 1925(b) statement on January 2, 2015.

Appellant raises the following issues for our review:

WHETHER THE TRIAL COURT ERRED IN DENYING [APPELLANT'S] MOTION TO SUPPRESS WHEN THE SEARCH WARRANT APPLICATION FAILED TO STATE WITH SUFFICIENT SPECIFICITY AND PARTICULARITY THE PLACE TO BE SEARCHED?

WHETHER THE TRIAL COURT ERRED IN DENYING [APPELLANT'S] MOTION TO SUPPRESS WHEN THE INFORMATION CONTAINED IN THE FOUR CORNERS OF THE SEARCH WARRANT AFFIDAVIT FAILED TO ESTABLISH PROBABLE CAUSE TO SEARCH 3327 WARD STREET?

WHETHER THE TRIAL COURT ERRED IN DENYING [APPELLANT'S] MOTION TO REVEAL THE IDENTITY OF THE CONFIDENTIAL INFORMANT WHEN [APPELLANT] SUFFICIENTLY DEMONSTRATED THAT PRODUCTION OF THE CONFIDENTIAL INFORMANT WAS MATERIAL TO HIS DEFENSE, REASONABLE, AND IN THE INTEREST OF JUSTICE?

(Appellant's Brief at 7).

In his first issue, Appellant argues the search warrant for 3327 Ward Street failed to describe the place to be searched with sufficient particularity. Appellant avers the search warrant indicated the building might have separate residences inside. Appellant asserts the police failed to arrange a controlled drug purchase or conduct additional surveillance on 3327 Ward Street to ascertain whether it contained multiple living units. Appellant contends the search warrant failed to describe the particular room or unit to be searched even though the police had reason to believe the building was a multiple-occupancy structure. Appellant concludes the search warrant was constitutionally defective. We disagree.

We review the denial of a suppression motion as follows:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.
>
> [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Williams*, 941 A.2d 14, 26-27 (Pa.Super. 2008) (*en banc*) (internal citations and quotation marks omitted).

Article I, Section 8 of the Pennsylvania Constitution provides in pertinent part: "[N]o warrant to search any place or to seize any person or

things shall issue without describing them as nearly as may be, nor without

probable cause[.]" Pa. Const. Art. I, § 8.

> The Pennsylvania Supreme Court has concluded Article 1, Section 8 of the Pennsylvania Constitution affords greater protection than the Fourth Amendment, …including a more demanding particularity requirement; the description must be as particular as reasonably possible. ***Commonwealth v. Grossman****, 521 Pa. 290, 555 A.2d 896, 899 (1989). "The twin aims of Article 1, Section 8 are the safeguarding of privacy and the fundamental requirement that warrants shall only be issued upon probable cause." ***Commonwealth v. Waltson****, 555 Pa. 223, 724 A.2d 289, 292 (1998).
>
>> In order to protect these twin aims, a warrant must describe the place to be searched and the items to be seized with specificity, and the warrant must be supported by probable cause. The place to be searched must be described "precise enough to enable the executing officer to ascertain and identify, with reasonable effort, the place intended, and where probable cause exists to support the search of the area so designated, a warrant will not fail for lack of particularity."
>
> ***Id.*** at 292[.]

***Commonwealth v. Belenky***, 777 A.2d 483, 486 (Pa.Super. 2001).

Generally, "A search warrant directed against an apartment house, or other multiple-occupancy structure will be held invalid for lack of specificity if it fails to describe the particular room or subunit to be searched with sufficient definiteness to preclude a search of other units." ***In Interest of Wilks***, 613 A.2d 577, 579 (Pa.Super. 1992). Nevertheless, "if there is cause to believe the premises covered by the warrant are being used as a single unit, a warrant directing the search of more than one unit is valid."

***Commonwealth v. Chamberlain***, 419 A.2d 1261, 1266 (Pa.Super. 1980). "In the absence of evidence as to any exterior features which would have indicated the presence of more than one unit, a warrant will not be invalidated because it authorizes a search of an entire house, although the house consists of two units." ***Commonwealth v. Davis***, 480 A.2d 1035, 1040-41 (Pa.Super. 1984). ***See also Commonwealth v. Andujar***, 399 A.2d 1074 (Pa.Super. 1979) (*en banc*) (holding description of row house in search warrant was sufficiently specific in light of all facts of record, where diligent efforts of police to uncover drug operation in building did not disclose division of interior into two living areas; all outward signs and reasonably available information indicated building was single-family residence); ***Commonwealth v. Simpkins***, 36 A.3d 623 (Pa.Super. 2012) (holding search warrant for row house was valid even though bedrooms in house were separately rented by multiple individuals, where house was zoned single family and nothing in building's appearance gave notice to police it was being used as rooming house; stating suppression was not justified simply by officer's acknowledgment that manner in which house is zoned is not necessarily way it is used). "[T]he reviewing court must make a practical, commonsense decision whether the place to be searched has been specified with sufficient particularity." ***Wilks, supra*** at 579.

Instantly, the search warrant provided the following description of the place to be searched:

> 3327 Ward Street, Pittsburgh, PA 15213. This single family home may have several separate residences inside, and is a three (3) story structure, with the first two (2) adorned in light brick, and the third floor in white siding. It is adorned with a white fence, a brick porch with accompanying brick wall, and a Blessed Mary Statue in the front yard.

(Attachment to Motion to Suppress, filed 2/6/13). At the suppression hearing, Appellant and the Commonwealth stipulated Officer Rosato would testify that there were no separate entrances, mailboxes, or meters at the house to suggest it was being used other than as a single-family home. *See* ***Andujar, supra***; ***Simpkins, supra*** (considering all facts of record to determine what information police had regarding number of residences in building to be searched). The police also examined city real estate records, which did not disclose the existence of separate dwelling units in the house. Additionally, the affidavit of probable cause stated the police detained a motorcyclist, who told the officers he regularly purchased narcotics at 3327 Ward Street. The motorcyclist did not refer to a specific apartment unit. The officers conducted surveillance on the premises, and no exterior features alerted them to the existence of more than one residence. Based on the reasonably available information at the officers' disposal, they had cause to believe 3327 Ward Street was a single-family home and did not contain multiple apartments. *See **Chamberlain, supra***. The warrant was not invalidated by the acknowledgment that the house might be illegally divided into separate living units. Absolute certainty regarding the occupancy status

of the building was not required. In light of the investigating officers' diligent efforts, including observations of the premises and an examination of real estate records, the description of the search location was as particular as reasonably possible. *See Andujar, supra*; *Belenky, supra*. Viewed in a practical, commonsense manner, the warrant described the location of the search with sufficient specificity.[2] *See Wilks, supra*; *Davis, supra*.

In his second issue, Appellant argues the affidavit supporting the search warrant failed to establish probable cause to search his residence. Appellant contends Officer Rosato provided no time frame as to when he or Officer Woodhall received neighborhood complaints and reports from the University of Pittsburgh police regarding narcotics activity at 3327 Ward Street. Appellant further asserts the reference to "neighborhood complaints" was a factual misstatement because the information actually came from a confidential informant. Appellant maintains the officers' personal observations were insufficient to establish probable cause because they conducted surveillance for only thirty-three minutes and observed only two

_____

[2] Moreover, the constitutional harm that the particularity requirement is intended to prevent, *i.e.*, overbroad searches, did not occur in this case. During the execution of the search warrant, the police discovered the house was in fact divided into two apartments. At that point, the police briefly detained the resident of the upper two floors and released her after they confirmed she was not associated with anybody in Appellant's first-floor residence. No evidence suggests the scope of the search exceeded the boundaries of Appellant's residence.

individuals enter the house. Appellant claims the affidavit of probable cause once stated the officers set up surveillance at 3327 **Lawn** Street, which was not the building where Appellant resided. Appellant argues the motorcyclist detained by police was an anonymous source, and the information he gave to the officers was uncorroborated hearsay. Appellant concludes the affidavit failed to establish probable cause to search 3327 Ward Street. We disagree.

As a preliminary matter, issues not raised in a Pa.R.A.P. 1925(b) statement will be deemed waived for appellate review. ***Commonwealth v. Castillo***, 585 Pa. 395, 888 A.2d 775 (2005). A Rule 1925(b) statement that is not specific enough for the trial court to identify and address the issues the defendant wishes to raise on appeal may also result in waiver. ***Commonwealth v. Reeves***, 907 A.2d 1 (Pa.Super. 2006), *appeal denied*, 591 Pa. 712, 919 A.2d 956 (2007).

> When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review. When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues. In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all.

***Id.*** at 2.

Here, Appellant alleged the following in his Rule 1925(b) statement on the issue of whether the search warrant was supported by probable cause:

"The information contained in the four corners of the search warrant affidavit failed to establish probable cause to search 3327 Ward Street, Pittsburgh, Pennsylvania 15213."  (Rule 1925(b) statement, filed 1/2/15).  Appellant failed to specify any reason that the affidavit was insufficient to establish probable cause.  In particular, Appellant failed to raise any of the specific arguments he presents on appeal regarding the alleged deficiency of the affidavit of probable cause.  As a result, in its opinion, the trial court merely recited the facts set forth in the affidavit and disagreed with Appellant's "conclusory statement" that the affidavit failed to establish probable cause. Thus, Appellant's issue, as generically framed in his Rule 1925(b) statement, is arguably waived for vagueness.  *See Reeves, supra*.

Moreover, "The standard for evaluating whether probable cause exists for the issuance of a search warrant is the 'totality of circumstances' test as set forth in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and adopted by [the Pennsylvania Supreme Court] in *Commonwealth v. Gray*, 509 Pa. 476, 484, 503 A.2d 921, 925 (1985)." *Commonwealth v. Jones*, 542 Pa. 418, 424, 668 A.2d 114, 116 (1995).

> A magistrate is to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.  The information offered to establish probable cause must be viewed in a common sense, nontechnical manner and deference must be accorded to the issuing magistrate.  The duty of a court reviewing the decision is to ensure that the magistrate had

a substantial basis for concluding that probable cause existed.

*Id.* at 424, 668 A.2d at 116-17 (internal citations and quotation marks omitted). A magistrate's finding of probable cause must be based on facts described within the four corners of the affidavit. ***Commonwealth v. Smith***, 784 A.2d 182 (Pa.Super. 2001).

Instantly, the affidavit of probable cause supporting the search warrant described the following facts: Officers Rosato and Woodhall believed 3327 Ward Street was a site of narcotics trafficking based on neighborhood complaints, reports from the University of Pittsburgh police, and the officers' personal observations of specific individuals going in and out of the house; based on that information, the officers conducted surveillance on the house; the officers observed a woman enter the house and leave only two or three minutes later; the officers subsequently observed a man enter the house, leave approximately three minutes later, and place something from his hand into the gas tank pouch attached to his motorcycle; the man then sped away on his motorcycle and disregarded a stop sign; the officers initiated a traffic stop of the motorcyclist, at which point he pulled out a clear plastic bag from the gas tank pouch and placed the objects inside the bag into his mouth; the motorcyclist resisted the officers' attempts to extract the objects and eventually swallowed them; while in custody, the motorcyclist admitted he had purchased narcotics from 3327 Ward Street and did so on a regular basis. Based on the information contained within the four corners of the

affidavit of probable cause, the magistrate properly concluded there was a fair probability the police would find evidence of narcotics activity at 3327 Ward Street. *See Jones, supra*. The motorcyclist's confession was corroborated by the officers' surveillance and their interaction with the motorcyclist leading up to his arrest. Further, the single reference in the affidavit to 3327 **Lawn** Street was an obvious clerical error with no effect on the warrant's validity, where the affidavit referred to Ward Street in all other respects. *See Commonwealth v. Yerger*, 482 A.2d 985 (Pa.Super. 1984) (explaining factual misstatements in affidavit of probable cause will not invalidate search warrant unless misstatements are deliberate and material).

Likewise, the omission from the affidavit that the "neighborhood complaints" came from an informant did not constitute a deliberate and material misstatement of fact. The lynchpin of the officers' probable cause was their surveillance of 3327 Ward Street and their interaction with the motorcyclist. The reference to "neighborhood complaints" was simply a background fact to explain in part the officers' initial suspicion of drug activity at the house. *See id.* (stating test for whether misstatement in affidavit is material is whether it is essential to search warrant application, not whether it merely strengthens application).

Additionally, the warrant was not defective due to the absence of a specific time frame within which the officers received complaints or reports from university police. The officers' personal observations on the day they

applied for the warrant demonstrated the ongoing nature of the criminal conduct at issue. **See Commonwealth v. Dennis**, 618 A.2d 972, 981 (Pa.Super. 1992), *appeal denied*, 535 Pa. 654, 634 A.2d 218 (stating: "Mere lapse of time between discovery of criminal activity and issuance of the warrant will not necessarily dissipate probable cause; a showing that the criminal activity is **likely** to have continued up to the time of issuance of the warrant will render otherwise stale information viable"). Consequently, even if properly preserved, Appellant's second issue would merit no relief.

In his third issue, Appellant argues the Commonwealth acknowledged at the suppression hearing that the police investigation involved the use of a confidential informant. Appellant asserts the informant apparently prompted the investigation, but it is unclear what he told the police regarding Appellant. Appellant contends the informant's identity was critical to Appellant's defense because it would have allowed him to learn the source of the informant's knowledge and how fresh or stale that information was. Appellant concludes the trial court erred when it denied his motion to disclose the identity of the informant. We disagree.

"Our standard of review of claims that a trial court erred in its disposition of a request for disclosure of an informant's identity is confined to abuse of discretion." **Commonwealth v. Watson**, 69 A.3d 605, 607 (Pa.Super. 2013) (quoting **Commonwealth v. Washington**, 63 A.3d 797, 801 (Pa.Super. 2013)). The following legal principles govern a request to

disclose a confidential informant's identity:

> [N]o fixed rule with respect to disclosure of the confidential informant's identity is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders the nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony and other relevant factors.
>
> This balance is initially weighted toward the Commonwealth, which holds a qualified privilege to maintain an informant's confidentiality to preserve the public's interest in effective law enforcement. However, the balance tips in favor of disclosure where guilt is found solely on police testimony from a single observation and testimony from a disinterested source, such as the informant, is available.

*Commonwealth v. King*, 932 A.2d 948, 952 (Pa.Super. 2007) (internal citations omitted).

"[R]egardless of whether the informant was an eyewitness to the transaction for which the defendant was charged, the Commonwealth retains a qualified privilege not to disclose an informant's identity."

*Commonwealth v. Withrow*, 932 A.2d 138, 140-41 (Pa.Super. 2007).

> To overcome that privilege, the defendant must show that his request for disclosure is reasonable and that the information sought to be obtained through disclosure is material to the defense. Although the defendant need not predict exactly what the informant will say, he must demonstrate at least a reasonable possibility the informant's testimony would exonerate him. Only after this threshold showing that the information is material and the request reasonable is the trial court called upon to determine whether the information is to be revealed.

*Id.* at 141 (internal citations and quotation marks omitted).

"Where the confidential informant is not a witness to the incident at issue, the defendant must show that the Commonwealth's disclosure of the identity of the informant is (1) material to his defense; (2) reasonable; and (3) in the interests of justice." **King, supra** at 952 (quoting **Commonwealth v. Hritz**, 663 A.2d 775, 778 (Pa.Super. 1995)).

> Regarding the element of materiality, the defendant must show as a threshold matter that the informant's identity is germane to the defense. Evidence is relevant and material to the defense if it tends to show that a specific crime of which a defendant stands accused was committed by someone else. The record must disclose a reasonable possibility that the information sought will **materially aid** the defendant in presenting his defense and is not obtainable from another source.

*Id.* at 953 (internal citations and quotation marks omitted) (emphasis in original).

Instantly, the record reveals the police initially learned about potential narcotics activity at Appellant's address from several sources, including a confidential informant. No evidence of record indicates, however, that the informant played any further role in the investigation. The informant was not a witness to any of the crimes for which Appellant was charged. At most, the informant merely contributed to the officers' decision to conduct surveillance at 3327 Ward Street on April 16, 2012. The informant had no involvement in that surveillance activity or in the subsequent execution of the search warrant. Thus, Appellant failed to show testimony from the

informant would tend to show that someone other than Appellant committed the offenses in question. *See id.* Based on the foregoing, Appellant was unable to establish that knowledge of the informant's identity was material to Appellant's defense, reasonable, and in the interests of justice. *See id.* Therefore, the court properly denied Appellant's request for disclosure of the informant's identity. *See Withrow, supra*. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/10/2016