J-A30029-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
v. :
:
:
KEVIN ROBERT KRESS : No. 1099 WDA 2017

Appeal from the Order, June 29, 2017,
in the Court of Common Pleas of Allegheny County,
Criminal Division at No(s): CP-02-CR-0000369-2017.

BEFORE: SHOGAN, J., KUNSELMAN, J., and STRASSBURGER*, J.

MEMORANDUM BY KUNSELMAN, J.: FILED MARCH 19, 2019

The Commonwealth appeals from the suppression court's order

suppressing the evidence of Kevin Kress' blood results.[1] After careful review,

we reverse.

The pertinent facts, as gleaned from the certified record, are as follows:

Shortly after nine o'clock on the evening of September 17, 2016, Kress was

involved in a two-car accident in which he was injured. While driving in the

westbound lane on Business Loop 376, George Kruth, and his wife, Victoria

Kruth ("the Kruths"), noticed a vehicle traveling off the ramp from I-376 East

_____

[1] Along with its notice of appeal, the Commonwealth has certified that the
granting of Kress' pre-trial motion substantially handicaps and/or effectively
terminates prosecution on the charges specified infra. See generally,
Commonwealth v. Dugger, 486 A.2d 382 (1985).

_____

* Retired Senior Judge assigned to the Superior Court.

at approximately 80 to 90 miles per hour. The vehicle rear ended the Kruths' automobile, and then struck the Jersey barrier.

Officer James Kazmierczak of the Moon Township Police Department responded to the accident. Officer Kazmierczak did not speak directly to Kress. At the scene, Officer Kazmierczak spoke to a passerby, James Hebert, who informed him that the driver was bleeding from his face and may have been drinking. Additionally, Corporal Gallagher, another responding officer, informed Officer Kazmierczak that he spoke with Kress, and that Kress admitted to both him and Hebert that he had been drinking. Medics arrived and transported Kress to Allegheny General Hospital where his blood sample was drawn at 10:05 p.m. See Criminal Complaint, 10/8/16, Affidavit of Probable Cause.

On September 26, 2016, Officer Kazmierczak applied for a warrant to obtain the toxicology reports for Kress, which a magisterial district judge ultimately issued. "The records indicate[d] a blood level of .306 based on plasma/serum" which a member of the Allegheny County Crime Lab converted "to whole blood which results in a .260 BAC. See id. Thereafter, the Commonwealth charged Kress with driving under the influence of alcohol or controlled substance (highest rate), driving under the influence of alcohol (accident involving bodily injury, serious bodily injury, or death, or damage to

a vehicle or other property), driving under the influence of alcohol (DUI general impairment), and careless driving.[2]

On June 13, 2017, Kress filed an omnibus pre-trial motion which sought the suppression of his toxicology report. Kress contended that the facts put forth within the "four corners" of the affidavit of probable cause were insufficient. On June 29, 2017, after a hearing on the motion at which the parties made only argument, the trial court agreed, and, therefore, granted Kress' motion to suppress.

This timely appeal follows. Both the Commonwealth and the trial court have complied with Pa.R.A.P. 1925. The Commonwealth raises one issue on appeal:

> I.      Given that probable cause is based on the finding of only a probability of criminal activity, and given that when evaluating a warrant for probable cause the determination of the issuing authority should be afforded great deference, did the trial court err in ruling that the facts as set forth in the affidavit of probable cause did not establish that Kress had been involved in an incident of driving under the influence of alcohol such that the search warrant for his blood-alcohol results was justified?

See Commonwealth's Brief at 4.

Our well-settled standard of review in an appeal from an order granting a motion to suppress is as follows:

> When reviewing an Order granting a motion to suppress we are required to determine whether the record supports that

_____

[2] See 75 Pa.C.S.A. §§ 3802(c), 3802(a)(1), 3804(b)(2), and 3714(a).

- 3 -

suppression court's factual findings and whether the legal conclusions drawn by the suppression court from those findings are accurate. In conducting our review, we may only examine the evidence introduced by the appellee along with any evidence introduced by the Commonwealth that remains uncontradicted. Our scope of review over the suppression court's factual findings is limited in that if these findings are supported by the record we are bound by them. Our scope of review over the suppression court's legal conclusions, however, is plenary.

Commonwealth v. Gutierrez, 36 A.3d 1104, 1107 (Pa. Super. 2012) (citation omitted).[3]

In Pennsylvania, "the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protects citizens from unreasonable searches and seizures." Commonwealth v. Clemens, 66 A.3d 373, 378 (Pa. Super. 2013) (internal alteration and quotation marks omitted). "Where there exists a reasonable expectation of privacy, Article I, Section 8 and the Fourth Amendment generally require police to obtain a warrant, issued by a neutral and detached magistrate and founded upon probable cause, prior to conducting a search or seizure of a person and/or a person's property, unless one of the few well delineated exceptions apply." Commonwealth v. Loughnane, 173 A.3d 733, 741 (Pa. 2017).

_____

[3] We note that, in this case, the trial court did not place its factual finding and conclusions of law on the record before granting Kress' suppression motion.

Pennsylvania's Rule of Criminal Procedure 203 provides, in relevant part:

Rule 203. Requirements for Issuance.

* * *

(B) No search warrant shall issue but upon probable cause supported by one or more affidavits sworn to before the issuing authority. . . The issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits.

* * *

(D) At any hearing on a motion for the . . . suppression of evidence, or for suppression of the fruits of evidence, obtained pursuant to a search warrant, no evidence shall be admissible to establish probable cause other than the affidavits provided for in paragraph (B).

Pa.R.Crim.P. 203. These provisions are known generally as the "four corners" rule. See generally, Commonwealth v. Edmunds, 586 A.2d 887 (Pa. 1991).

As noted above, Kress asserted that the facts within the "four corners" of the affidavit of probable cause were insufficient to justify the issuance of a search warrant. "The standard for evaluating whether probable cause exists for the issuance of a search warrant is the 'totality of the circumstances' test as set forth" in Illinois v. Gates, 462 U.S. 213 (1983), and adopted by the Pennsylvania Supreme Court in Commonwealth v. Gray, 503 A.2d 921, 925 (1985). Commonwealth v. Jones, 668 A.2d 114, 116 (Pa. 1995). "A magistrate is to make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her] , including

- 5 -

the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Jones, 668 A.2d at 116-117 (emphasis added).

"The duty of a court reviewing the decision is to ensure that the magistrate had a substantial basis for concluding that probable cause existed." Id. It is the Commonwealth's burden to provide this basis. Commonwealth v. Leed, 186 A.3d 405, 413 (Pa. 2018). "[A] magistrate's probable cause determination should receive deference from the reviewing courts." Leed, 186 A.3d at 413 (citing Gates, 462 U.S. at 236). "In keeping with the Fourth Amendment's strong preference for warrants, 'courts should not invalidate . . . warrants by interpreting affidavits in a hyper[-]technical, rather than a [common sense] manner.'" Id.

The affidavit in support of the warrant reads as follows:

> Your Honor, your affiant is Officer James Kazmierczak of the Moon Township Police Department. I have been a police officer since 1997, and I have been with the Moon Township Police Department since 2000. I am currently assigned to the patrol division.
>
> All of the information contained in this affidavit was learned directly by your affiant or related to me by other persons involved in the investigation. All witnesses providing information will be available to testify at any and all court proceedings arising from the issuance of this process.
>
> On Saturday, 9-17-16, at 9:10 PM, I responded to a motor vehicle crash on Business Loop 376 West near Ewing Road. On arrival, I located one of the vehicles involved. They were

on the berm of the road just before the off ramp. I spoke to George Kruth and his wife Victoria. George complained of neck pain and Victoria complained of shoulder pain but neither wanted to be seen by medics. George was the driver and Victoria had been in the front passenger seat. They stated that they were travelling westbound in the right lane when the other vehicle came off the ramp from I-376 E at 80-90 MPH and rear ended them and then struck the jersey barrier. I could see the other vehicle involved was still in the left lane approximately 200 feet away. A passerby advised me that the driver of that vehicle was bleeding heavily from his face and may have been drinking. I advised Cpl Gallagher who responded to that vehicle.

On his arrival, he spoke with the driver, who was identified as Kevin Kress. He was bleeding about his face. Kress admitted drinking to Cpl Gallagher and to witness James Hebert. Medics arrived and subsequently transported Kress to Allegheny General Hospital. Because Kress was involved in a crash where a person required treatment at a hospital and because he admitted to drinking, a blood sample was sought as per the implied consent law. Cpl Gallagher went to Allegheny General and attempted to obtain the blood sample but Kress refused.

Your affiant believes that the medical records contain evidence and as such, are subject to search.

Your affiant asserts that there is probable cause to issue process, namely a search warrant, for the requested item.

Application for Search Warrant, 9/26/16, at 2.

As noted above, the trial court did not make factual findings or conclusions of law. See n. 3. In its Rule 1925(a) opinion, the trial court gave the following rationale for suppressing the blood test results:

The affiant, Officer James Kazmierczak of Moon Township police department, related that he was a police officer since 1997, yet relayed no information relative to his experience in either accident or DUI investigation. Further, it appears he had no first hand contact with [Kress] in this case. Mr. and Mrs. George Kruth told Officer Kazmierczak they were

struck from behind by [Kress'] vehicle at the off ramp of 376, and they estimated the speed of [Kress'] vehicle at 80-90 mph.

There is no explanation as to how the [Kruths] observed [Kress'] vehicle from behind, nor how they estimated the speed of [Kress'] vehicle. There is no evidence that the [Kruths] were injured by this accident. There is no indication of the extent of damage to [Kruths'] vehicle.

An unknown, unidentified passerby advised Officer Kazmierczak that [Kress] was bleeding from his knee and that [Kress] had been drinking, without any explanation as to how he/she reached that conclusion.

Officer Kazmierczak summoned other units to assist and Officer Gallagher arrived.

There is no indication that Officer Kazmierczak, the affiant, had any interaction whatsoever, with [Kress]. No field sobriety tests were administered by the affiant or Officer Gallagher.

For these reasons, the court granted [Kress'] Motion to Suppress.

Trial Court Opinion, at 2-3.[4]

In response, the Commonwealth asserts "that all of [the trial court's] stated reasons for granting suppression are either belied by the record or irrelevant for purposes of suppression or both." Commonwealth's Brief at 14. The Commonwealth further argues:

For example, contrary to the trial court opinion, the affidavit clearly states that the witness to whom Kress admitted to drinking was named James [Hebert]. More importantly, Kress also admitted his drinking to a Corporal Gallagher, who was on scene along with Officer Kazmierczak; thus, any lack of personal interaction between

_____

[4] It is undisputed that Kress was observed bleeding about his face and not his knee.

- 8 -

Officer Kazmierczak and Kress is of no moment, as it is well settled that observations made by fellow officers engaged in a common investigation are indeed a reliable basis for information contained in a warrant. Furthermore, the affidavit stated that both Mr. and Mrs. [Kruth]complained of pain as a result of the impact with Kress' vehicle and that they had earlier been able to observe that vehicle enter the highway from an off-ramp at a high rate of speed. As for the trial court's problem with the fact that the affidavit offered no explanation as to how the [Kruths] were able to estimate that Kress was traveling t 80-90 miles per hour, the Commonwealth would assert that a motorist, obviously knowing his own speed while operating a vehicle, would certainly be able to offer a fairly reasonable estimate of the speed at which the vehicle behind him was traveling when it smashed into the back of his car.

The Commonwealth would further state that the fact that there were no field-sobriety tests (the affidavit indicated that Kress was transported to the hospital for treatment— as mentioned above, he was bleeding from his face—which would explain why such tests were not administered) no listed damage to the Kruths' vehicle, and no mention of Officer Kazmierczak's experience with accident/DUI investigations [is], similar to the lack of interaction between the officer and Kress, irrelevant to the question of whether the court erred in granting Kress' suppression motion. As made clear above, the affidavit established that the vehicle that Kress was operating at a high rate of speed crashed into the back of the [Kruths'] car at a time when Kress had been consuming alcohol. The Commonwealth does not believe that the circumstances, viewed together, lead to only "a mere suspicion" that evidence of Kress' intoxication would be found in his toxicology reports, but, rather, "a fair probability" that such would be found there, which is all that is required under the law. Magisterial District [Judge] Murray concluded as much, and, given that that conclusion was entitled to deference from the reviewing court, the Commonwealth submits that the granting of Kress' motion to suppress must be reversed.

Commonwealth's Brief at 15-16 (citations omitted).

Our review of the affidavit of probable cause, in conjunction with the relevant case law cited above, supports the Commonwealth's contention that Judge Murray had a substantial basis upon which to conclude that probable cause existed for the issuance of the search warrant in this case.

As emphasized above, "probable cause" involves only probabilities. "Probable cause exists where the officer has knowledge of sufficient facts and circumstances to warrant a prudent person to believe that a driver has been driving under the influence of alcohol or a controlled substance." Commonwealth v. Hilliar, 943 A.2d 984, 994 (Pa. Super. 2008). Furthermore, "probable cause does not involve certainties, but rather the factual and practical considerations of everyday life on which reasonable and prudent men act." Commonwealth v. Dommel, 885 A.2d 998, 1002 (Pa. Super. 2005) (citation omitted). The Pennsylvania Supreme Court has stated that '[i]t must … be remembered that probable cause is based on a finding of the probability, not a prima facie showing, of criminal activity, and that deference is to be accorded a magistrate's finding of probable cause." Commonwealth v. Baker, 615 A.2d 23, 25 (Pa. 1992).

In deciding to grant Kress's suppression motion, the trial court focused on factors that were not within the affidavit, rather than evaluating the evidence it did contain. So too, the additional arguments Kress makes to support the trial court's determination put forth a hyper-technical approach to the contents of the affidavit of probable cause, rather than applying a common-sense approach, considering the totality of the circumstances. See

Kress' Brief at 9-19.  For example, Kress cites Commonwealth v. Kohl, 576 A.2d 1049 (Pa. Super. 1990) to support his argument that the mere occurrence of an accident and an allegation of speeding does not establish alcohol impairment.  As noted above, we do not take the facts in isolation when determining probable cause but, instead, look at the totality of the circumstances.  See Commonwealth v. Nobalez, 805 A.2d 598 600 (Pa. Super. 2002).  In evaluating the facts, it is not done in a piecemeal fashion.  Id.  We consider all the circumstances presented in the affidavit together which established that Kress was speeding, caused an accident, and admitted drinking.

In summary, we conclude that, under the totality of the circumstances, the affidavit presented by Officer Kazmierczak established probable cause that justified the issuance of a search warrant for Kress' blood results.  Thus, we hold the trial court improperly suppressed the results of Kress's blood alcohol test.  Accordingly, we reverse the trial court's order and remand for trial.

Order reversed.  Case remanded for trial.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/19/2019